SALTER, J.
 

 Defense Control USA, Inc. (“DCUSA”), a Texas corporation, appeals a non-final circuit court order denying its motion to dismiss for lack of personal jurisdiction. The motion to dismiss was directed to an amended complaint by the appellee, Atlantis Consultants Limited Corp., asserting various claims against DCUSA and a related Luxembourg corporation identified as Defense Control, Inc. (“DCI”).
 
 [1]
 
 DCUSA maintained that it was never a party to the “Independent Consultant Agreement” among “Defense Control and its subsidiaries” and Atlantis; that Atlantis failed to allege any basis for long-arm jurisdiction over DCUSA under section 48.193, Florida Statutes (2006); that DCUSA lacked the requisite “minimum contacts” with Florida; and that certain “declarations” supporting Atlantis’s jurisdictional allegations were insufficient to counter DCUSA’s “affidavits.”
 

 We affirm the order, concluding that the trial court relied on substantial competent evidence and applicable Florida law in finding jurisdiction over DCUSA. We also conclude that the declarations filed by Atlantis (prepared by Atlantis in conformance with 28 U.S.C. § 1746)
 
 [2]
 
 were sufficient to be considered in the same fashion as “affidavits” under the key jurisdictional case of
 
 Venetian Salami Co. v. Parthenais,
 
 554 So.2d 499 (Fla.1989).
 

 The Claims and Defendants
 

 The underlying dispute is essentially a commission claim by Atlantis against the two “Defense Control” defendants. Atlantis’s “consultancy” was a written contract granting Atlantis the exclusive right to sell Defense Control’s products' — for a 20% commission — in designated countries in the Middle East.
 
 [3]
 

 It is undisputed that Atlantis (a Florida corporation based in Miami) entered into the Independent Consultant Agreement with “Defense Control and its subsidiaries having its
 
 main
 
 office at Route de Luxembourg, 5, L-4761, Petange, Luxembourg” (emphasis provided), that the Agreement is governed by Florida law, and that the parties agreed to exclusive venue in Miami-Dade County. The Agreement was executed for “Defense Control” — not “Defense Control USA, Inc.,” “Defense Control, S.A.,” or any other specific “subsidiary” — by “Patrick C. Hamon, President.”
 

 During jurisdictional discovery, additional facts were disclosed. Patrick Hamon and Fabrice Magnier began doing business as “Defense Control” around 1996. Defense Control, S.A., incorporated in Luxembourg in 2001, was the first of several incorporated entities using the name “Defense Control.” The company did business in the private, shadowy'
 
 [4]
 
 field of counter-
 
 *697
 
 terrorism equipment and training. Related companies or offices were later opened in France, Virginia, Algeria, and Texas. DCUSA was incorporated in Texas in 2004 and has its office in San Antonio. The Defense Control entities established a single website used for all entities and offices, www.defensecontrol.com, and Hamon and Magnier were identified on that site as the designated “co-founders” and “management” of the group.
 

 Defense Control, S.A., paid the cata-logue and exhibition fees for the annual “Milipol” (military and police) trade show so that its products and services could be exhibited and sold. The Milipol exhibition, held in 2004 in Qatar and in 2005 in Paris, was attended by Hamon as President of both the Luxembourg company and DCU-SA. In speaking to the U.S. Ambassador at the Qatar Milipol exhibition, Hamon said that he “necessarily” spoke about DCUSA. DCUSA was formed, and some of its armored vehicles were assembled, in Texas because U.S. governmental procurement authorities wanted to do business with U.S. entities.
 

 Hamon testified that Defense Control, S.A., was not reimbursed by DCUSA for the website or Milipol expenses. He testified that Defense Control, S.A., or DCU-SA, he was not sure which, had an agreement with the inventor of the “Height Adjustable Rescue Assault System,” known as “HARAS,” allowing the companies to sell the HARAS devices to third parties.
 

 Atlantis’s President, Fahmi A1 Ubbad, signed an affidavit describing a visit by Hamon to Miami before the 2005 Milipol show. A1 Ubbad went to dinner with Ha-mon and discussed, among other things, A1 Ubbad’s negotiations with a “Qatar client” for the purchase of HARAS vehicles.
 

 Following the 2005 Milipol show, “Defense Control, Inc.”
 
 [5]
 
 entered into an equipment purchase agreement for HAR-AS equipment with the Internal Security Force of the State of Qatar. Atlantis demanded a commission under the Independent Consultant Agreement, and Hamon and the Defense Control defendants denied that any amount was due. When Atlantis brought its lawsuit in Florida, DCUSA filed a special appearance and moved to dismiss for lack of personal jurisdiction over it. Affidavits and testimony provided by DCUSA demonstrated that the two Defense Control defendants are separately incorporated, have separate bank accounts, and have some but not all shareholders in common. After considering the jurisdictional affidavits, declarations, deposition testimony, and exhibits, the trial court denied the motion to dismiss. This appeal followed.
 

 Venetian Salami
 

 DCUSA maintains that Atlantis failed to provide competent substantial evidence sufficient to establish its jurisdictional allegations. Specifically, DCUSA argues that Atlantis did not prove that DCUSA was the alter ego of Defense Control, S.A., that there was improper conduct in the formation or use of DCUSA under a “corporate veil piercing” analysis, or that DCUSA was somehow a joint venturer, parent, subsidiary, or agent vis-a-vis Defense Control, S.A.
 

 These arguments fail, because the alter ego, “veil piercing,” and other predicates for liability are merits issues, not jurisdictional issues. At this juncture, the trial court was only obligated to determine whether the allegations in the amended complaint regarding DCUSA sat
 
 *698
 
 isfy the two tests set forth in
 
 Venetian Salami
 
 The first test is whether the allegations of the amended complaint meet the statutory requirements of the long-arm statute. In this case, Atlantis alleged that DCUSA breached an agreement with Atlantis by failing and refusing to make payments to Atlantis in Florida as required under section 48.193(l)(g), Florida Statutes (2006). The second test is whether DCUSA “had sufficient minimum contacts with the State of Florida in order to satisfy due process.”
 
 Venetian Salami,
 
 554 So.2d at 500. Here, it was uncontroverted that DCUSA’s President visited Miami and discussed Atlantis’s prospects for a sale of HARAS equipment to a buyer in Qatar. DCUSA argues, in effect, that its President, Patrick Hamon, was only in Miami in his capacity as President of Defense Control, S.A., but the existing record is clear that neither Hamon nor the entities made such distinctions in their dealings with Atlantis.
 

 At this juncture, the trial court was not required to take the further step of deciding whether these facts support an alter ego or “piercing the corporate veil” theory of liability under
 
 Dania Jai-Alai Palace Inc. v. Sykes,
 
 450 So.2d 1114 (Fla.1984). The critical point was whether DCUSA had the requisite “minimum contacts” with Florida. Here, DCUSA’s senior officer was personally present in Miami to discuss business with Atlantis. A year earlier, that same officer signed the consulting agreement with Atlantis — an agreement that provided for Florida venue and the application of Florida law. These were certainly constitutionally sufficient contacts with Florida.
 

 At a later stage of these proceedings, DCUSA may or may not prevail via summary judgment or at trial on its defenses that it was never a party or intended party to the 2004 consulting agreement, and that DCUSA was not merely a vehicle for the commonly controlled group to circumvent its commission agreement with Atlantis. For the threshold purposes of pleading and jurisdiction, however, Atlantis has satisfied the twin requirements of
 
 Venetian Salami.
 

 Atlantis’s Declarations
 

 Finally, DCUSA raised what is apparently a novel objection to Atlantis’s use of “declarations” under 28 U.S.C. § 1746, rather than “affidavits,” to frame the factual allegations relating to jurisdiction. Declarations are sanctioned by the federal statute and by Florida statute section 92.525(2), requiring a signed written statement made under penalties of perjury, while “affidavits” are governed by a separate Florida law, section 92.50, requiring a separate acknowledgment signed and sealed by a notary, judicial officer, or (if executed in a foreign country) a U.S. consular official.
 

 Certain Florida statutes, for example section 948.06, Florida Statutes (2008), specifically require an “affidavit,” and a declaration subject to the penalties of perjury is therefore insufficient.
 
 Jackson v. State,
 
 881 So.2d 666 (Fla. 5th DCA 2004). Similarly, the recording laws require an acknowledgment for signatures on certain instruments in an obvious effort to prevent forgery. The use of affidavits for factual assertions regarding jurisdiction and minimum contacts is a practice described in Florida case law, however, and has not been codified in a rule of procedure. Prior cases simply require adequate indicia of credibility, as opposed to mere allegations, so that the pertinent facts are established by “affidavit, deposition,
 
 or other proof.” Elmex Corp. v. Atl. Fed. Sav. & Loan Ass’n,
 
 325 So.2d 58, 62 (Fla. 4th DCA 1976) (emphasis supplied).
 

 In federal court, declarations in writing, setting forth facts asserted to be
 
 *699
 
 true, subject to the penalties of perjury, and signed by the declarant, can ordinarily be used in lieu of affidavits.
 
 See PetMed Express, Inc. v. MedPets.Com, Inc.,
 
 336 F.Supp.2d 1213, 1217 n. 1 (S.D.Fla.2004). We see no reason to reach a contrary result for purposes of establishing pertinent jurisdictional facts. We thus reject DCUSA’s argument that the declarations relied upon by Atlantis were somehow insufficient.
 

 Conclusion
 

 The trial court correctly determined that the amended complaint, buttressed by the declarations, depositions, exhibits, interrogatories, and responses to requests for admission filed by the parties, satisfied the requirements for both the Florida long-arm statute and constitutional “minimum contacts,” thereby establishing personal jurisdiction over DCUSA. The order denying DCUSA’s motion to dismiss was properly denied.
 

 Affirmed.
 

 [1]
 

 . The appellant maintains that the correct name of the Luxembourg entity is actually Defense Control, S.A.
 

 [2]
 

 . For a short time the lawsuit was removed to federal court; the case was ultimately remanded back to the circuit court. Atlantis relied to a limited extent on the declarations submitted while the case was in federal court.
 

 [3]
 

 . "Saudi Arabia, Kuwait, Qatar, Oman, Bahrain, United Arab Emirates, Yemen, Egypt, Iraq, Libya, Jordan, Tunisia, Sudan, Syria, Lebanon, Algeria, and Morocco” (excluding one specifically identified prospect in Morocco).
 

 [4]
 

 .The governmental and private clients purchasing armored vehicles, kidnapping prevention training, "extrication” of hostages from
 
 terrorist
 
 groups, and similar goods and services, obviously value confidentiality.
 

 [5]
 

 . The signature block and other provisions within the purchase agreement make it clear that the intended entity was “Defense Control USA, Inc.,” the Texas corporation.