# Third District Court of Appeal

## State of Florida

Opinion filed March 7, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1015
Lower Tribunal No. 14-3780
_____

## Fincantieri-Cantieri Navali Italiani S.p.A.,
Appellant,

vs.

## Anthony Yuzwa,
Appellee.


An appeal from a non-final order from the Circuit Court for Miami-Dade County, Rodney Smith, Judge.

Fowler White Burnett, P.A. and Allan R. Kelley and Helaine S. Goodner; Sheppard, Mullin, Richter & Hampton LLP and Martin D. Katz, pro hac vice (Los Angelesk, CA), for appellant.

Loughren, Doyle & Reising, P.A. and Richard B. Doyle, Jr. (Ft. Lauderdale); Banning LLP and William L. Banning, pro hac vice (Rancho Santa Fe, CA), for appellee.


Before SUAREZ, LAGOA, and SALTER, JJ.

SUAREZ, J.

In this case, we are asked to determine whether Florida courts have personal

jurisdiction over an Italian shipbuilder based on injuries a Canadian citizen

sustained on a cruise ship built in Italy, and owned by a Washington corporation, while the ship was in international waters in the Pacific Ocean. The trial court determined that it had both general and specific personal jurisdiction. We reverse because the foreign shipbuilder's contacts with Florida are not so continuous and systematic as to render it essentially at home in this State nor is there an adequate connection between Florida and the underlying claims.

## BACKGROUND

Fincantieri-Cantieri Navali Italiani S.p.A. ("Fincantieri"), Appellant/Defendant below, is an Italian shipbuilding company. Anthony Yuzwa ("Yuzwa"), Appellee/Plaintiff below, is a Canadian citizen who was injured while working as a performer aboard a Fincantieri-built cruise ship—the MS *Oosterdam*. Fincantieri built the *Oosterdam* in Italy pursuant to a contract, signed in London and governed by English law, with HAL Antillen N.V. ("HAL"), a Netherlands Antilles corporation and subsidiary of the Miami-based Carnival Corporation ("Carnival"). The *Oosterdam* is owned by Holland America Line, a Carnival subsidiary headquartered in Seattle, Washington.

On February 14, 2011, Yuzwa, who worked aboard the *Oosterdam* as a professional dancer, was injured during a rehearsal when a stage lift crushed his foot. This occurred while the ship was off the coast of Mexico in the Pacific Ocean, having embarked from its home port in San Diego, California the day

2

before. Yuzwa sued Fincantieri, and other defendants, in both California and Florida. However, following jurisdictional discovery in California, Yuzwa dismissed Fincantieri from that case, maintaining the instant action in Florida against Fincantieri and one other defendant (Harbour Marine Systems, Inc.).[1]

Yuzwa's operative Complaint asserts claims for negligence, strict products liability, and breach of express and implied warranty. Fincantieri moved to dismiss for lack of personal jurisdiction and *forum non conveniens*[2] and attached sworn proof contesting Yuzwa's jurisdictional allegations. Yuzwa filed an opposition with supporting declarations, the deposition of a senior Fincantieri executive, and various other exhibits. Following a non-evidentiary hearing, the trial court denied Fincantieri's motion to dismiss. This timely appeal follows.

## ANALYSIS

We review the trial court's order denying Fincantieri's motion to dismiss for lack of personal jurisdiction *de novo*. See, e.g., Wendt v. Horowitz, 822 So. 2d 1252, 1256 (Fla. 2002). Our jurisdictional analysis is governed by Venetian Salami Co. v. Parthenais, 554 So. 2d 499 (Fla. 1989), which requires both a statutory and constitutional inquiry to determine whether Florida courts may exercise personal jurisdiction over a nonresident defendant. First, the plaintiff must allege sufficient jurisdictional facts to bring the action within the ambit of

---

[1] Harbour Marine is not a party to this appeal.
[2] Because we find jurisdiction is lacking, we do not address *forum non conveniens*.

3

Florida's long-arm statute: section 48.193, Florida Statutes (2017). Id. at 502. Second, the nonresident defendant must have sufficient "minimum contacts" to satisfy constitutional due process requirements. Id.; see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) ("The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant.").

Unlike long-arm statutes in other states, Florida's statutory requirements are not coextensive with federal due process requirements. See Internet Sols. Corp. v. Marshall, 39 So. 3d 1201, 1207 (Fla. 2010) (explaining that Florida's long-arm statute "bestows broad jurisdiction" whereas "United States Supreme Court precedent interpreting the Due Process Clause . . . imposes a more restrictive requirement."); cf Modern Principles of Personal Jurisdiction, 4A Fed. Prac. & Proc. Civ. § 1069 (4th ed.) ("[B]ecause a majority of states (and Puerto Rico) have enacted jurisdictional statutes that either have expressly incorporated the due process standard or have been interpreted to extend to the limits of due process, this analysis frequently is collapsed by the federal court into a one-step inquiry: does the assertion of personal jurisdiction satisfy the requirements of due process?").

A key component of the Venetian Salami analysis is its allocation of the burden of proof. Initially, the plaintiff bears the burden of pleading sufficient

4

jurisdictional facts to fall within the long-arm statute. Venetian Salami, 554 So. 2d at 502. "If the allegations in the complaint sufficiently establish long-arm jurisdiction, then the burden shifts to the defendant to contest the jurisdictional allegations in the complaint, or to claim that the federal minimum contacts requirement is not met, by way of affidavit or other similar sworn proof.[3]" Belz Investco Ltd. P'ship v. Groupo Immobiliano Cababie, S.A., 721 So. 2d 787, 789 (Fla. 3d DCA 1998) (citing Venetian Salami, 554 So. 2d at 502; Field v. Koufas, 701 So. 2d 612 (Fla. 2d DCA 1997)). "If properly contested, the burden then returns to the plaintiff to refute the evidence submitted by the defendant, also by affidavit or similar sworn proof." Id. If the parties' sworn proof is in conflict, "the trial court must conduct a limited evidentiary hearing to resolve the factual dispute." Id.[4]

Both the long-arm statute and federal due process distinguish between two types of personal jurisdiction: general and specific. General jurisdiction is based purely on a defendant's contacts with the forum state, regardless of where the

---

[3] Much of Fincantieri's sworn proof takes the form of declarations. See Def. Control USA, Inc. v. Atlantis Consultants Ltd. Corp., 4 So. 3d 694, 699 (Fla. 3d DCA 2009) (holding that declarations can be used in lieu of affidavits to establish jurisdictional facts).

[4] The trial court's analysis deviated from Venetian Salami. Instead of shifting the burden back to the Plaintiff once Fincantieri had submitted its sworn proof contesting the jurisdictional allegations in the Complaint, the court determined that it "must consider the pleadings and affidavits in the light most favorable to the plaintiff."

cause of action arises. In order for a state to exercise such extensive jurisdiction, a defendant's contacts must be sufficiently "substantial and not isolated" and "continuous and systematic." See § 48.193(2), Fla. Stat. (2017); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) ("Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation." (footnote omitted)). Specific jurisdiction does not require the same level of contacts; instead, jurisdiction is based on the cause of action arising out of a defendant's certain minimum contacts with the state. See § 48.193(1)(a), Fla. Stat. (2017); Helicopteros, 466 U.S. at 414 ("When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction."). Because the trial court incorrectly found that Fincantieri was subject to both general and specific jurisdiction, we address each category in turn.

**General Jurisdiction**

Florida's long-arm statute provides a basis for asserting general personal jurisdiction pursuant to section 48.193(2):

> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is

6

wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

The trial court determined that Fincantieri was subject to general jurisdiction based on the following contacts with Florida: (1) Fincantieri's long-standing "partnership" with Carnival, spanning over 25 years; (2) numerous contracts with Carnival, resulting in the construction of around 60 cruise ships and amounting to 90% of the cruise ships built under Fincantieri's Merchant Ships Business Unit; (3) over 25 billion dollars in revenue for building ships for Carnival; (4) a Florida office and Area Manager to solicit cruise ship business and serve Florida clients; and (5) frequent meetings and communications with Carnival related to the building of cruise ships.

It is undisputed that Fincantieri has a substantial business relationship with Carnival; however, we conclude that some of the trial court's findings are overstated. For instance, the trial court found that there was a "partnership" between Carnival and Fincantieri based on the deposition testimony of a Fincantieri representative who referred to the relationship with Carnival as "more of a partnership[.]" But there is no evidence in the record that Carnival and Fincantieri have ever formed a legal partnership. See 8B Fla. Jur. 2d Business Relationships § 541 ("A partnership is only established when both parties contribute to the capital or labor of the business, have a mutuality of interest in

7

both profits and losses, and agree to share in the assets and liabilities of the business."). And although Fincantieri has a single employee in Florida—the "Area Manager"—the sworn proof below conclusively shows that he simply serves as a liaison, directing any ship owner inquiries to the correct person or office in Italy. Finally, testimony from Fincantieri's Senior Executive Vice President of the Merchant Ships Business Unit establishes that meetings with Carnival are "very, very usually done in Italy" because that is where Fincantieri has all its organization, structure, technical development, and shipyards.

Notwithstanding the trial court's misstatements of the evidentiary record, Fincantieri does appear to be engaged in "substantial and not isolated activity within this state" under the plain meaning of the long-arm statute due to years of shipbuilding for Carnival. However, we find that Fincantieri's contacts with Florida are nevertheless insufficient to satisfy the more restrictive due process requirements for general jurisdiction.

In International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), the United States Supreme Court held that in order to subject a foreign corporation to personal jurisdiction, due process requires certain "minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" The Court further explained that "there have been some instances in which the *continuous* corporate operations within a state were thought

8

so *substantial* and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Id. at 318 (emphasis added). This eventually came to be known as general jurisdiction. Over time, the Supreme Court has refined its approach to general jurisdiction and provided more guidance as to the "continuous and substantial" contacts necessary to satisfy due process.

An early "textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum" is the Supreme Court's 1952 decision in Perkins v. Benguet Consol. Min. Co., 342 U.S. 437 (1952). Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 928 (2011) (quoting Donahue v. Far Eastern Air Transport Corp., 652 F.2d 1032, 1037 (C.A.D.C.1981)). In Perkins, the Court ruled that Ohio could exercise general jurisdiction over a Philippine mining corporation because Ohio was the company's temporary principle place of business while the Japanese were occupying the Philippine Islands during World War II. 342 U.S. at 447. Although the company had halted mining operations due to the Japanese occupation, the company's president and principle stockholder maintained an office in Ohio where he carried out "a continuous and systematic supervision of the necessarily limited wartime activities of the company." Id. at 448.

In Helicopteros, a case arising out of a helicopter crash in Peru, the Court held that general jurisdiction over a Colombian corporation was improper because its contacts with Texas—a contract negotiation session, accepting checks drawn on a Texas bank, purchasing 80% of its helicopter fleet along with parts and accessories, and sending personnel to Texas for training—were not sufficiently "continuous and systematic." 466 U.S. at 416. Although the Columbian corporation made regular purchases in Texas for substantial sums, the Court held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." Id. at 418.

More recently, the Supreme Court has decided two cases that raise the bar even higher for general jurisdiction. In Goodyear, the Court held that North Carolina courts lacked general jurisdiction over foreign tire manufacturers in a case arising out of a bus accident in France. 564 U.S. at 919. Although some of the foreign manufacturers' tires were sold in North Carolina, the Court explained that the "[f]low of a manufacturer's products into the forum . . . may bolster an affiliation germane to *specific* jurisdiction . . . [b]ut ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." Id. at 927. More

10

importantly, a unanimous Supreme Court held that in order to be subject to general jurisdiction, a foreign corporation's contacts with the forum State must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State." Id. at 919.

Similarly, in Daimler AG v. Bauman, 134 S. Ct. 746 (2014), the Court relied on the "at home" requirement in Goodyear to determine that California courts lacked general jurisdiction over Daimler, a German automobile manufacturer, for claims arising out of Argentina's "Dirty War." The Court held that even if the substantial California contacts of Daimler's American subsidiary, Mercedez-Benz USA, were attributable to Daimler, general jurisdiction would not be proper because California was not Daimler's place of incorporation or principle place of business; in other words, Daimler was not "at home" in California. Id. at 760-61.

Based on this understanding of the constitutional due process requirements, we conclude that Fincantieri is not subject to general jurisdiction in Florida because its contacts are not sufficiently "continuous and systematic" as to render it "at home" in this State. In comparing this case to the "textbook" example in Perkins, we observe that although Fincantieri does have an office in Miami, the unrefuted sworn proof below was that the purpose of this office, with its single employee, is to serve as a point of contact for ship owners and direct any inquiries to the correct person or office in Italy. Unlike the office in Perkins, Fincantieri's

11

Miami office is not involved in any of the company's actual operations. Indeed, all of Fincantieri's executive officers and directors reside in Italy. Moreover, the vast majority of Fincantieri's 7,000 plus employees are based in the company's offices and shipyards in Italy.

In both Goodyear and Daimler, the Supreme Court explained that with respect to a corporation, "the paradigm forum for the exercise of general jurisdiction . . . [is] the place of incorporation and principal place of business . . . ." Daimler, 134 S. Ct. at 760 (quoting Goodyear, 564 U.S. 735). Here, it is undisputed that Fincantieri is an Italian corporation, and its principal place of business is Italy. While it is true that general jurisdiction is not necessarily limited to those two "paradigm forums," we decline to "look beyond the exemplar bases *Goodyear* identified," such as Perkins, "and approve the exercise of general jurisdiction" based on the magnitude of Fincantieri's business activities in Florida. See Daimler, 134 S. Ct. at 761 (declining to go beyond the paradigm forums and approve the exercise of general jurisdiction wherever a corporation "engages in a substantial, continuous, and systematic course of business").

Yuzwa points us to a single unpublished opinion in support of his argument that general jurisdiction exists in this case. See Barriere v. Cap Juluca, No. 12-23510-CIV, 2014 WL 652831 (S.D. Fla. Feb. 19, 2014). In Barriere, the United States District Court for the Southern District of Florida determined that it had

general jurisdiction over Cap Juluca, an Anguillan resort, based on its "substantial and not isolated activity in Florida[,]" which included the maintenance and operation of a Miami sales office; a Miami agent who managed Cap Juluca's assets; and a Florida-based agent that promoted, managed, operated, and provided reservation services for Cap Juluca. Id. at *8.

We are not persuaded that Barriere is applicable here. As an initial matter, we note that Cap Juluca did not include any sworn proof with its motion to dismiss, so the allegations in the complaint remained unrebutted. Id. Further, unlike the office in Barriere, Fincantieri's Miami liaison office is not a sales office, and there is no evidence that Fincantieri's assets are managed by a Florida-based agent. Finally, the reasoning in Barriere was recently called into question in McCullough v. Royal Caribbean Cruises, Ltd., 268 F. Supp. 3d 1336, 1349 (S.D. Fla. 2017) ("Thus, this Court disagrees with the ruling in *Barriere*, as it is inconsistent with *Daimler*.").

Because Fincantieri's contacts with Florida were not sufficiently "continuous and systematic" as to render it "at home" in this State, we hold that it is not subject to general jurisdiction. We now turn to the second category of personal jurisdiction: specific jurisdiction.

**Specific Jurisdiction**

13

Section 48.193(1)(a) lists several specific acts that could subject a nonresident defendant to personal jurisdiction in Florida, provided that the plaintiff's cause of action "arises from" the specified acts.

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state **for any cause of action arising from any of the following acts**:

(emphasis added). Yuzwa alleges that Fincantieri is subject to specific jurisdiction in Florida based on the following two acts:

> 1.    Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> 2.    Committing a tortious act within this state.

§ 48.193(1)(a), Fla. Stat.

As to the first act, —"[o]perating, conducting, engaging in, or carrying on a business . . . in this state"—it is undisputed that Fincantieri does business in Florida. But the relevant inquiry here is whether Yuzwa's cause of action *arises from* Fincantieri's business in Florida. See Moo Young v. Air Canada, 445 So. 2d 1102, 1104 (Fla. 4th DCA 1984) ("The fact that a non-resident does business in Florida is not enough to obtain jurisdiction over it. In addition, there must be some connection between the cause of action pleaded and the business operations conducted in Florida."). This is known as the "connexity" requirement. Id. The

14

trial court, based on an expansive interpretation of this requirement, found that there was a sufficient connection between Yuzwa's claims and Fincantieri's business in Florida. We disagree.

The trial court relied on several cases in support of its holding that "'connexity' is found where a defendant is engaging in business activities related to the types of products or activities that caused a plaintiff harm." While it is true that the injury need not occur in Florida, and the product that caused the injury need not be sold in Florida, we are reluctant to find that the connexity requirement has been satisfied where *both* the injury and the sale of the product occurred outside of the State, as is the case here. Indeed, in all of the cases the trial court uses for support, there is a clear connection to Florida. See Davis v. Pyrofax Gas Corp., 492 So. 2d 1044, 1044 (Fla. 1986) (finding that a nonresident manufacturer or wholesaler could be sued in Florida where a space heater sold in Michigan, but also marketed and sold in Florida, caused injury in Florida); Canron Corp. v. Holt, 444 So. 2d 529, 530 (Fla. 1st DCA 1984) (finding jurisdiction over a New York corporation, with its principal place of business in South Carolina, where the corporation sold and shipped equipment to Florida that later caused injury in Georgia); Kravitz v. Gebrueder Pletscher Druckgusswaremfabrik, 442 So. 2d 985, 987 (Fla. 3d DCA 1983) (finding jurisdiction over a foreign bicycle rack manufacturer where the rack was purchased in Illinois, but identical racks were

also sold in Florida, and the injury occurred in Florida); Shoei Safety Helmet Corp. v. Conlee, 409 So. 2d 39 (Fla. 4th DCA 1981) (finding jurisdiction over a Japanese helmet manufacturer where the helmet was sold indirectly in Florida, and the injury also occurred in Florida).

Here, there is no apparent connection between Yuzwa's claims and Fincantieri's business in Florida. The *Oosterdam* was not constructed in Florida; it was not purchased in Florida; it is not owned by a Florida entity, it did not embark from a Florida port; and the injury, to a non-Florida resident, occurred thousands of miles away from Florida in the Pacific Ocean. The only connection Yuzwa identifies is that similar cruise ships have been sold in Florida. We hold that this is far too remote to satisfy the connexity requirement under both the long-arm statute and the Due Process Clause. See Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., 137 S. Ct. 1773, 1781 (2017) (explaining that "a defendant's relationship with a. . . third party, standing alone, is an insufficient basis for jurisdiction"); Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1223–24 (11th Cir. 2009) ("A finding that such a tenuous relationship . . . somehow satisfied the relatedness requirement would not only contravene the fairness principles that permeate the jurisdictional due process analysis, but would also interpret the requirement so broadly as to render it virtually meaningless.").

Finally, we address the second act upon which specific jurisdiction is based—"[c]ommitting a tortious act within this state." § 48.193(1)(a)(2), Fla. Stat. Here again, it is not apparent how Florida is remotely connected to the underlying claims. Moreover, the plain language of the statute requires that the actual tortious act be committed within the state. Yuzwa alleges that Fincantieri negligently designed the *Oosterdam's* stage and lifts in Florida. But this allegation is contradicted by the unrebutted sworn proof below, which establishes that Fincantieri designed the *Oosterdam* in Italy and purchased a "turnkey" stage from HMS, S.A., a French company. Yuzwa also argues that "Fincantieri, through its agent, HMS, negligently serviced, maintained and/or repaired the stage in Florida at least once during the warranty period." While it is true that Fincantieri inspected the *Oosterdam* once in Florida in 2004, the unrebutted sworn proof below was that "the inspection and maintenance of the entertainment areas and stage would have been undertaken by HMS, which Fincantieri neither directed nor controlled." Consequently, we do not find an adequate connection between Florida and either of the two specified acts upon which specific jurisdiction was based.

## CONCLUSION

Because Fincantieri's contacts with Florida do not render it "at home" here, and there are insufficient connections between this state and the underlying claims,

17

we reverse, holding that the circuit court lacked both general and specific personal jurisdiction over Fincantieri.

Reversed.