# Third District Court of Appeal

## State of Florida

Opinion filed December 2, 2020.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-0197
Lower Tribunal No. 19-18705
_____

**Zion Williamson,**
Appellant,

vs.

**Prime Sports Marketing, LLC, et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Weil, Gotshal & Manges LLP, and Edward Soto, Corey Berman, and Pravin Patel, and Jeffrey S. Klein, Gregory Silbert, and Robert B. Niles-Weed (New York, NY), and Zachary D. Tripp (Washington, DC), for appellant.

Eaton & Wolk, P.L., and Douglas F. Eaton, for appellees.


Before LOGUE, SCALES, and LINDSEY, JJ.

LINDSEY, J.

Appellant Zion Williamson (Defendant below) appeals from a non-final order denying his motion to dismiss for lack of personal jurisdiction.[1] Because Appellee Prime Sports Marketing, LLC (Plaintiff below) failed to allege sufficient jurisdictional facts in its Complaint to bring its action within the ambit of Florida's long-arm statute, we reverse the denial of Williamson's motion to dismiss for lack of personal jurisdiction and remand without prejudice to amend.

## I. BACKGROUND

Zion Williamson was a successful student athlete at Duke University during the 2018-19 basketball season. In early 2019, Gina Ford, the owner of Prime Sports, went to North Carolina on multiple occasions to discuss the possibility of Prime Sports becoming Williamson's agent for branding and marketing. Williamson declared for the NBA Draft on April 15, 2019.[2] Five days later, Williamson entered into a Marketing and Branding Agreement (the "Agreement") with Prime Sports at his home in North Carolina.

The parties' contractual relationship was short-lived. On May 31, 2019, Williamson formally terminated his relationship with Prime Sports. Creative Artist Agency, LLC ("CAA"), Williamson's NBA agent, replaced Prime Sports as

---

[1] Florida Rule of Appellate Procedure 9.130(a)(3)(C)(i) authorizes appellate review of non-final orders that determine "the jurisdiction of the person[.]"

[2] As expected, Williamson was the No. 1 draft pick.

Williamson's exclusive marketing agent. In June 2019, Williamson sued Prime Sports in federal court in North Carolina, seeking, among other relief, a declaration that the Agreement is unenforceable under North Carolina's Uniform Athlete Agent Act.

Despite the pending lawsuit in North Carolina, Prime Sports brought this breach of contract and tort action against Williamson in Florida.[3] Williamson moved to dismiss for lack of personal jurisdiction, arguing that the Complaint failed to allege sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm statute or satisfy the constitutional minimum contacts requirement. In support of his motion, Williamson submitted an affidavit reiterating that he is not a Florida resident and that "[n]one of [his] interactions with [Prime Sports] occurred in or related to Florida." Ford submitted an Affidavit in opposition to Williamson's motion, which emphasized Prime Sports' connections to Florida and Williamson's alleged communications with Prime Sports.

At the hearing on Williamson's motion, Prime Sports primarily focused on its undisputed contacts with Florida and Williamson's communications with Prime Sports. Williamson argued that the focus should be on his contacts with Florida and

---

[3] Prime Sports also sued CAA and other individuals associated with CCA, but Williamson is the only defendant who is a party to this appeal.

not Prime Sports' contacts. The trial court ultimately denied Williamson's motion to dismiss, and Williamson timely appealed.

## II. ANALYSIS

We review the trial court's order denying Williamson's motion to dismiss for lack of jurisdiction de novo. See Phelan v. Lawhon, 229 So. 3d 853, 857 (Fla. 3d DCA 2017) (citing Wendt v. Horowitz, 822 So. 2d 1252, 1256 (Fla. 2002)). The issue in this case is governed by the two-pronged jurisdictional analysis set forth in Venetian Salami Co. v. Parthenais, 554 So. 2d 499 (Fla. 1989). The first step in this analysis, the statutory prong, is to determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of Florida's long-arm statute, section 48.193, Florida Statutes (2020). Id. at 502. If so, the next inquiry, the constitutional prong, "is whether sufficient 'minimum contacts' are demonstrated to satisfy due process requirements." Id. (quoting Unger v. Publisher Entry Servs., Inc., 513 So. 2d 674, 675 (Fla. 5th DCA 1987)).

As this Court explained in Fincantieri-Cantieri Navali Italiani S.P.A. v. Yuzwa, 241 So. 3d 938, 941–42 (Fla. 3d DCA 2018):

> A key component of the Venetian Salami analysis is its allocation of the burden of proof. Initially, the plaintiff bears the burden of pleading sufficient jurisdictional facts to fall within the long-arm statute. [Venetian Salami, 554 So. 2d at 502]. "If the allegations in the complaint sufficiently establish long-arm jurisdiction, then the burden shifts to the defendant to contest the jurisdictional allegations in the complaint, or to claim that the federal

4

minimum contacts requirement is not met, by way of affidavit or other similar sworn proof." Belz Investco Ltd. P'ship v. Groupo Immobiliano Cababie, S.A., 721 So. 2d 787, 789 (Fla. 3d DCA 1998). "If properly contested, the burden then returns to the plaintiff to refute the evidence submitted by the defendant, also by affidavit or similar sworn proof." Id. If the parties' sworn proof is in conflict, "the trial court must conduct a limited evidentiary hearing to resolve the factual dispute." Id.

(Citations and footnotes omitted).

Though lengthy, Prime Sports' Complaint contains few jurisdictional allegations. According to the Complaint, Williamson is a resident of South Carolina. There are no allegations that directly state the trial court has jurisdiction over Williamson. The only explicit jurisdictional allegation applicable to Williamson relies on the Agreement's choice of law provision: "[t]his Court further has jurisdiction over the within matter as the contract given rise to the dispute herein by its terms, conditions which were agreed upon by all parties to the contract herein, is to be governed, interpreted and construed by the applicable laws of the State of Florida." It is undisputed on appeal that a choice of law provision alone is insufficient to subject a nonresident defendant to personal jurisdiction.[4]

---

[4] Section 685.102(1), Florida Statutes (2020), authorizes a party, "to the extent permitted under the United States Constitution, [to] maintain in this state an action or proceeding against any person . . . located outside this state, if the action or proceeding arises out of or relates to any contract . . . for which a choice of the law of this state . . . has been made . . . *and which contains a provision by which such person . . . located outside this state agrees to submit to the jurisdiction of the courts of this state.*" (Emphasis added).

5

Florida's long-arm statute, section 48.193, lists specific acts that could subject a nonresident defendant to personal jurisdiction in Florida.[5] Prime Sports argues there are sufficient allegations in the Complaint to bring the action within the following three provisions of Florida's long-arm statute:

1. "Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state." § 48.193(1)(a)(7), Fla. Stat.

2. "Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." § 48.193(1)(a)(1), Fla. Stat.

3. "Committing a tortious act within this state." § 48.193(1)(a)(2), Fla. Stat.

We address Prime Sports' arguments with respect to each of these acts in turn.

*1. Breach of Contract Allegations*

Prime Sports argues that its allegation that Williamson breached the express terms of the Agreement by failing to pay Prime Sports compensation is sufficient to subject Williamson to jurisdiction for breaching a contract in Florida. The allegation appears in the Complaint as follows:

> That at all relevant times herein mentioned, [Williamson] breached express terms of the [Agreement] with Plaintiffs and did so with the intent for Defendants to usurp and

---

[5] In addition to the acts specified in the statute, which give rise to specific jurisdiction, "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." § 48.193(2), Fla. Stat. This is known as general jurisdiction. It is undisputed that Prime Sports did not seek to establish general jurisdiction over Williamson.

6

misappropriate Plaintiffs' trade/business secrets/business plans/work product and to usurp and misappropriate the due compensation owed to Plaintiffs pursuant to the [Agreement] for same; authorizing/instructing Defendants . . . to publically [sic] announce to the world that [Williamson] had signed with same Defendants to serve as his Global Marketing/Branding firm/Agent; refusing to, honor, adhere to and perform the terms and conditions of his [Agreement] with Plaintiffs; failing to and/or refusing to pay Plaintiffs the due compensation owed to Plaintiffs pursuant to the [Agreement] with Plaintiffs—all while knowing that he already had a valid and enforceable contract for same services with the Plaintiffs herein.

For jurisdiction to lie pursuant to section 48.193(1)(a)(7), the breaching conduct must be a failure "to perform acts required by the contract t*o be performed in [Florida]*." (Emphasis added). Here, the allegation, which says nothing about jurisdiction or Florida's long-arm statute, is silent as to whether the breaching conduct occurred in Florida or whether performance was required in Florida. Moreover, the Agreement itself does not require any acts to be performed in Florida.

Prime Sports contends that even though the Agreement is silent as to where payment was to be made, the legal presumption is that a debt is to be paid at the creditor's place of business. See Unger, 513 So. 2d at 676. While it is true that there is a legal presumption that debt is to be paid at the creditor's place of business— even in the absence of an agreement to do so—the *allegations in the Complaint* say

7

nothing about this.  In other words, there is no allegation in the Complaint that Williamson breached by failing to pay a debt in Florida.[6]

Indeed, in the cases Prime Sports relies on in support of this legal presumption, though the agreement may have been silent, *the complaint* alleged jurisdiction based on a payment that was to be made in Florida.  See Aspsoft, Inc. v. WebClay, 983 So. 2d 761, 766 (Fla. 5th DCA 2008) ("It is sufficient for purposes of satisfying the first prong of the *Venetian Salami* analysis *that a complaint allege that a contract was made by a resident plaintiff with a non-resident defendant and that payment was agreed to have been made in Florida*." (emphasis added)); Smith Architectural Group, Inc. v. Dehaan, 867 So. 2d 434, 436–37 (Fla. 4th DCA 2004) ("In this case, the complaint alleged sufficient jurisdictional activity to bring this action within Florida's long-arm statute. [Defendant] contracted with a Florida company and agreed to make payment to the company in Florida."); Unger, 513 So. 2d at 676 ("The complaint clearly alleges the *breach of an agreement that payment was to be made in Florida*." (emphasis added)); Guritz v. Am. Motivate, Inc., 386 So. 2d 60, 61 (Fla. 2d DCA 1980) ("[Plaintiff's] complaint alleges in part . . . [Defendant] has done acts enumerated in Section 48.193, Florida Statutes, . . . which acts are more particularly described as follows . . . breaches a contract in this state

---

[6] Ford's Affidavit states that Williamson breached the Agreement when he signed a contract with CAA to be his exclusive marketing agent.  The Affidavit is also silent as to any breach of contract for failure to pay a debt in Florida.

by failing to perform acts required by the contract to be performed in this state, *and more particularly failing to make payment for the goods sold and delivered by the plaintiff to the defendant in Bradenton, Manatee County, Florida.*" (emphasis added)).

*2. Business Allegations*

Prime Sports also argues that "the allegations of the complaint and the evidence in the affidavit demonstrate clearly that Williamson is subject to long-arm jurisdiction because he was 'operating, conducting, engaging in, or carrying on a business or business venture in this state.'" Prime Sports fails to cite the specific allegations or evidence it is referring to. Moreover, Prime Sports actually admits in its Answer Brief that this specific argument was not raised below.

Prime Sports primarily relies on three cases in support of its argument that Williamson, despite not having a local presence in Florida, was engaged in sufficient business activities in Florida: Bank of Wessington v. Winters Government Securities Corp., 361 So. 2d 757 (Fla. 4th DCA 1978); American Financial Trading Corp. v. Bauer, 828 So. 2d 1071 (Fla. 4th DCA 2002); and Gray v. ACT Holdings, Inc., 05-21987-CIV, 2006 WL 8433399 (S.D. Fla. June 1, 2006). However, these cases are readily distinguishable.

In Bank of Wessington, the Fourth District considered the "collective activities" of a nonresident bank, which included ten separate oral contracts with a

9

registered Florida broker during a two-month period to buy and sell Government National Mortgage Association Future Contracts. 361 So. 2d at 760. The court concluded these activities were sufficient to show that the defendant bank was engaged in a general course of business in Florida for pecuniary benefit. Id. In Bauer, a resident of Texas initiated more than 120 transactions with a Florida commodities investment firm to trade approximately 2,540 commodities options over approximately a one-year period. 828 So. 2d at 1073. The court concluded that these transactions, which involved more than $465,000, showed a general course of business activity in Florida. Id. at 1074. Finally, in Gray, Mr. Gray, a Florida resident, sued two California defendants for unjust enrichment after he was not paid for approximately 100 telephone conversations and for raising a total of $323,000 from Florida investors between December 2004 and January 2005 (Mr. Gray had also previously helped with other investments). 2006 WL 8433399, at *1. The US District Court for the Southern District of Florida concluded it could exercise long-arm jurisdiction because the nonresident defendants "conducted business in Florida because they used a Florida resident to secure investments and to solicit Florida investors." Id. at *3. Moreover, Mr. Gray's claim for unjust enrichment arose from the nonresident defendants' business activities in Florida. Id.

Here, by contrast, over a nearly one-month period, there was only one instance of payment for an endorsement deal under the Agreement, which was for a television

10

commercial for the movie "Hobbs & Shaw."  It is undisputed that Prime Sports received $100,000 directly from the producers, retained a 15% commission, and sent the balance of $85,000 to Williamson.  But this single transaction is not the same as the collective business activities in the above-cited cases.  Moreover, it is not clear how any of Prime Sports' claims *arise from* this transaction, as required by the long-arm statute.  See Fincantieri, 241 So. 3d at 945 ("Section 48.193(1)(a) lists several specific acts that could subject a nonresident defendant to personal jurisdiction in Florida, provided that the plaintiff's cause of action 'arises from' the specified acts.").

### 3. Tort Allegations

According to the allegations in the Complaint, in May 2019, Ford met Williamson in California and provided him with an "extensive and comprehensive" marketing plan, which included numerous multi-million-dollar opportunities that Prime Sports had obtained for Williamson.  The Complaint further alleges that Williamson represented he was requesting the marketing plan to facilitate a direct working relationship between CAA, Williamson's NBA Agent, and Prime Sports and that Williamson knew "the stated reason/intent . . . was false, misleading and untrue . . . ."  According to Prime Sports, these allegations establish long-arm jurisdiction over Williamson under section 48.193.(1)(a)(2) ("Committing a tortious act within this state.").

11

Prime Sports relies on Machtinger v. Inertial Airline Services, Inc., 937 So. 2d 730 (Fla. 3d DCA 2006) for the proposition that fraudulent misrepresentations from outside of Florida that are relied on in Florida and result in injury in Florida are tortious acts committed within the state for the purposes of long-arm jurisdiction. In Machtinger, the complaint alleged that the defendants conspired to obtain payment for work that was not completed. Id. at 733. In furtherance of this conspiracy, one of the defendants "allegedly submitted fraudulent invoices for the work to the [Plaintiff's] Florida headquarters, misrepresented to [Plaintiff's] officers in Florida that the work had been completed, signed [Plaintiff's] checks for payment on the fraudulent invoices, and mailed the checks to Florida to obtain countersignatures." Id. This Court determined that Florida could exercise long-arm jurisdiction based on the allegations in the Complaint.

Importantly, this Court noted:

> [T]the amended complaint sufficiently allege[d] that the fraud could not have occurred but for [defendant's] misrepresentations to [plaintiff's] officers who reside, work, and control the corporation's finances in Florida. [Plaintiff] allege[d] that the fraudulent misrepresentations were made in Florida, relied upon in Florida, and [plaintiff] countersigned and issued the checks from Florida. Therefore, [plaintiff] has successfully alleged that a substantial portion of the tortious acts occurred in Florida making personal jurisdiction over [defendant] proper.

Id. at 735.

Conversely, the allegations Prime Sports relies on in its Complaint do not mention Florida nor do they mention Florida's long-arm statute. In fact, it is unclear from the allegations whether the alleged misrepresentations were made at in-person meetings between Prime Sports and Williamson, all of which occurred outside of Florida, or whether the misrepresentations occurred via telephone or email.[7] Prime Sports contends that its Affidavit "expanded on the allegations by averring that all of Williamson's requests, including the request to meet in California, were directed to Plaintiffs in Florida." But it was not the requests to meet that were allegedly fraudulent but the reasons for requesting the marketing plan. The Affidavit does not say anything about the allegedly fraudulent reasons for requesting the marketing plan being directed to Florida; it simply states that the invitations to all in-person meetings outside of Florida were sent by Williamson to Florida phone numbers, email addresses, and office addresses.

## III.  CONCLUSION

Because Prime Sports has failed to allege sufficient jurisdictional facts to bring its action within the ambit of Florida's long-arm statute, we reverse the denial

---

[7] The allegations seem to undermine Prime Sports' position. According to the Complaint, "on or about May 23, 2019," Williamson met with Ford *in California*. Moreover, on that same day, "[Williamson], and/or his parents, requested that [Ford] provide them with a copy of Plaintiff's extensive and comprehensive marketing plan . . . ."

13

of Williamson's motion to dismiss for lack of personal jurisdiction.[8]  We remand without prejudice to amend the Complaint.  <u>See</u> <u>Henderson v. Elias</u>, 56 So. 3d 86, 90 (Fla. 4th DCA 2011) (holding that dismissal of a complaint for insufficient jurisdictional allegations should be without prejudice to amend).

Reversed and remanded.

---

[8] Because the statutory prong of <u>Venetian Salami</u> has not been satisfied, it is unnecessary to address the more demanding constitutional inquiry.