# Third District Court of Appeal
## State of Florida

Opinion filed December 3, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1559
Lower Tribunal No. 21-23426-CA-01
_____

**Steven Paul Kowalski,**
Appellant,

vs.

**Binance Holdings Ltd.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Thomas J. Rebull, Judge.

Shutts & Bowen LLP, and Patrick G. Brugger; Meister Seelig & Fein PLLC, and Alexander D. Pencu, Chrisopher J. Major, and Kathryn E. Matthews (New York, NY), for appellant.

Carlton Fields, P.A., and Joseph H. Lang, Jr. (Tampa), and Benjamin M. Stoll (Washington, D.C.), for appellee.

Before LINDSEY, GORDO and GOODEN, JJ.

GOODEN, J.

This appeal requires us to determine whether the trial court erred by dismissing with prejudice Appellant Steven Paul Kowalski's initial complaint for lack of personal jurisdiction and failure to state a cause of action. Because we answer that question in the affirmative, we reverse and remand for further proceedings consistent with this opinion.

## I.

Kowalski, an Australian citizen and resident of Dubai, United Arab Emirates, invested in bitcoin. Bitcoin is a decentralized digital currency transacted over the internet as an alternative to government-issued money. See generally State v. Espinoza, 264 So. 3d 1055, 1058-59 (Fla. 3d DCA 2019). Kowalski stored his bitcoin in his digital Electrum wallet. While in Australia, Kowalski tried to update the software for the wallet, but fell prey to a phishing scam. The phishing scam installed malware. The malware allowed hackers to access the wallet and steal 1,400 bitcoin, which was valued at more than $80,000,000.00.

Kowalski posted about the theft on the Bitcoin Abuse Database and reported it to the Australian police. Kowalski also hired private investigators. The private investigators determined that the hackers put the stolen bitcoin through hundreds of layering transactions, in which the coins were split and recombined with other coins to obscure the source of the funds. The private

investigators ultimately traced 84% of the stolen bitcoin to six addresses registered with Appellant Binance Holdings, Ltd. Binance, incorporated in the Cayman Islands, is the largest cryptocurrency exchange in the world.

The addresses were owned by or connected to Brandon Chun Yin Ng.[1] Chun Yin Ng is a U.S. citizen and, at the time of the theft, was residing in Gainesville, Florida. After receiving the stolen bitcoin, Chun Yin Ng deposited it into his Binance accounts, exchanged it for monero,[2] and then withdrew the monero from the Binance exchange to a private wallet on an untraceable blockchain. Chun Yin Ng conducted these trades from his computer in Florida.

Kowalski's private investigators contacted Binance and requested the accounts be frozen. But Binance only agreed to a temporary freeze.

In the meantime, Binance conducted an internal investigation and interviewed Chun Yin Ng. Chun Yin Ng claimed that he had identified an arbitrage opportunity during which he traded monero for bitcoin at a more

---

[1] Kowalski's private investigators identified Brandon Chun Yin Ng through a judicial disclosure process in Singapore compelling Binance to reveal the account holders receiving Kowalski's stolen bitcoins.

[2] Monero is a cryptocurrency designed to be untraceable and anonymous. For that reason, it is favored by many criminals. Many regulated exchanges do not list monero. During the relevant period, Binance was one of the only exchanges to permit trading of this cryptocurrency.

3

favorable rate with someone not on the Binance exchange. Internally, Binance documented that Chun Yin Ng was moving funds across several accounts with heavy exposure to the Electrum phishing campaign. Binance warned Chun Yin Ng to not continue trading in that manner.[3]

Thereafter, Binance told Kowalski's private investigators that it would no longer restrict the accounts without law enforcement involvement. Binance then unfroze the accounts.

Two weeks later, the German police contacted Binance. But, at that point, all funds had been drained from the accounts. Binance responded demanding to be indemnified by the German police. When the German police did not bow to the demand, Binance refused to cooperate.

In October 2021, Kowalski filed a verified complaint against Binance, Chun Yin Ng, and others, asserting claims for civil conspiracy, conversion, civil theft, fraud, unjust enrichment, constructive trust and disgorgement, and aiding and abetting. Relevant here, the verified complaint alleged:

- "The Court has personal jurisdiction over Binance . . . pursuant to Florida Statutes § 48.193(1)(a)(1) and the United States Constitution because the Exchanges engaged in business in Florida."

---

[3] Kowalski asserts Binance instructed employees to warn "VIP" customers about account freezes from law enforcement requests so they could take action to protect themselves.

4

- "Independently, this Court has personal jurisdiction over Defendants, pursuant to Florida Statutes § 48.193(1)(a) and the United States Constitution because each of the Defendants is part of a conspiracy to steal, launder, and dissipate Kowalski's BTC, and two of the conspirators . . . committed tortious acts in Florida in furtherance of the conspiracy."

- "[T]he Court has personal jurisdiction over Defendants and subject matter jurisdiction over Plaintiff's causes of action."

- "Binance knowingly assisted, further, encouraged and concealed the conspiracy by, among other things:
  a) Failing to maintain a freeze on Binance Accounts after it was notified that those accounts were being used to move the proceeds of a crime;
  b) Refusing to provide Kowalski's lawyers and investigators with, and thwarting their efforts to otherwise obtain, information necessary to prevent the further dissipation of his Stolen Bitcoin;
  c) Knowingly permitting the continued use of its exchange to launder the proceeds of the crime, including by continuing to allow transfers of Stolen Bitcoin into the Binance Accounts even after it was notified of the theft and that those accounts were being used to move the proceeds of crime;
  d) Knowingly facilitating the exchange of Stolen Bitcoin for Monero and the subsequent withdrawal of that Monero from the Individual Defendants' accounts, thereby assisting in the dissipation of Plaintiff's Stolen Bitcoin;
  e) Failing to perform adequate customer due diligence and KYC procedures at the time the Individual Defendants opened accounts at Binance;
  f) Failing to utilize adequate AML transaction monitoring software systems to review and flag the Individual Defendants' suspicious money laundering transactions on its exchange; and
  g) Failing to file the requisite SARs tied to the Individual Defendants' transactions on its exchange."

5

Binance moved to dismiss for lack of personal jurisdiction and for failure to state a claim. In support, Binance provided an affidavit from its chief compliance officer, Samuel Lim. Lim declared that Binance does not engage in business in the United States or Florida, does not "serve, target, or seek revenue from Florida," has "no connection with Florida arising from any action or conduct purposely directed towards Florida," and that the alleged conspirators were not affiliated with Binance in any official capacity. Binance also asserted it had no direct contact with the individual defendants and did not conspire with them.

Kowalski opposed the motion with additional declarations, including from several attorneys and the head of fraud investigations at Coinfirm Limited, a cryptocurrency analytics firm. One affidavit addressed the Department of Justice's investigation into Binance and its dealings in the United States, public allegations against Binance, and the Singapore disclosure action.

The parties engaged in jurisdictional discovery and submitted supplemental briefing. Kowalski filed a declaration from Amanda Wick, a former federal prosecutor and expert in anti-money laundering and cryptocurrency, and two attorney declarations attaching key testimony and documents obtained in discovery. Kowalski also requested judicial notice of

6

public filings from the Department of Justice's criminal case against Binance, including the Statement of Facts of Binance's Plea Agreement. In the Plea Agreement, Binance admitted it operated its exchange wholly or substantially in the United States, and served millions of users in the United States. Binance did not submit more evidence.

Due to the number of parties and motions at issue, the parties agreed that the already-scheduled special set hearing "should be a non-evidentiary hearing at this juncture." The parties and the court proceeded in that manner.

But, after the hearing, the trial court entered an order concluding that Binance did not contest Kowalski's factual allegations. Therefore, the trial court did not engage in the burden shifting analysis or hold an evidentiary hearing on the issue of personal jurisdiction. See Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989). Reviewing the face of the complaint and stating it did not consider any of the evidence filed by the parties, it granted the motion to dismiss for lack of jurisdiction.

Yet the order shows that the trial court *did* view at least some of the evidence and went beyond the allegations in the complaint. In its recitation of facts, the trial court cited an affidavit filed by Kowalski and facts that were discovered in jurisdictional discovery, which were explained in supplemental

7

briefing. In a footnote, the trial court also noted that Kowalski cited actual communications between Binance employees and Chun Yin Ng, but found that those communications are not an express agreement to conspire to commit a tort. These communications were discovered in jurisdictional discovery and were not contained on the face of the complaint.

And—without allowing Kowalski to amend his initial pleading—the trial court dismissed the complaint for failure to state a cause of action. It also determined amendment would be futile due to Kowalski's conspiracy theory of liability. In sum, the dismissal was with prejudice.

This appeal timely followed.

**II.**

Our review of an order dismissing a complaint for lack of personal jurisdiction and failure to state a claim is de novo. Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582, 584 (Fla. 2000); Batista v. Rodriguez, 388 So. 3d 1098, 1101 (Fla. 3d DCA 2024). "We review for abuse of discretion the trial court's decision to prohibit amendment of the complaint." Intego Software, LLC v. Concept Dev., Inc., 198 So. 3d 887, 892 (Fla. 1st DCA 2016).

**III.**

"Unlike long-arm statutes in other states, Florida's statutory requirements are not coextensive with federal due process requirements." Fincantieri-Cantieri Navali Italiani S.p.A. v. Yuzwa, 241 So. 3d 938, 941 (Fla. 3d DCA 2018). For that reason, personal jurisdiction over a non-resident involves a two-step analysis: a statutory and a constitutional inquiry. Venetian Salami Co., 554 So. 2d at 502.

First, the court determines whether the complaint sets forth sufficient jurisdictional allegations to bring the action within Florida's long-arm statute, section 48.193, Florida Statutes. Id. This is accomplished by either tracking the language of the statute without supporting facts or alleging specific facts that demonstrate defendant's actions fit within the statute. Belz Investco Ltd. P'ship v. Groupo Immobiliano Cababie, S.A., 721 So. 2d 787, 789 (Fla. 3d DCA 1998). See also Hilltopper Holding Corp. v. Est. of Cutchin ex rel. Engle, 955 So. 2d 598, 601 (Fla. 2d DCA 2007); Wash. Cap. Corp. v. Milandco, Ltd., 695 So. 2d 838, 841 (Fla. 4th DCA 1997).

"The first step of the Venetian Salami analysis may involve a burden shift." Kitroser v. Hurt, 85 So. 3d 1084, 1087 (Fla. 2012). The plaintiff has the initial burden to plead the basis for personal jurisdiction. Venetian Salami Co., 554 So. 2d at 502. To contest personal jurisdiction, the defendant must either argue that the plaintiff failed to meet its initial pleading burden or

9

"provide admissible evidence that refutes the essential jurisdictional facts set forth in the plaintiff's complaint. If a defendant fully refutes the jurisdictional allegations, then the burden shifts back to the plaintiff to prove the basis for jurisdiction." Kitroser, 85 So. 3d at 1087. If the plaintiff fails to rebut the defendant's evidence, then the motion to dismiss must be granted. Wash. Cap. Corp., 695 So. 2d at 841. But when the affidavits or evidence cannot be reconciled, the trial court must hold a limited evidentiary hearing to determine jurisdiction. Venetian Salami Co., 554 So. 2d at 503.

If the first step is satisfied, the court then examines whether there are sufficient minimum contacts to satisfy due process. Id. at 502. "To satisfy such constitutional requirements, a court must determine that 'the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" Kitroser, 85 So. 3d at 1087 (citing World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

To rationalize the trial court's order, Binance claims that it only made a facial attack on personal jurisdiction and did not contest the allegations in the complaint. But this would require us to turn a blind eye to how Binance defended the case and what Binance filed. It would likewise require us to flout the burden-shifting framework mandated by the Florida Supreme Court

10

in <u>Venetian Salami Co.</u>  That we cannot do.  <u>See</u> <u>Hoffman v. Jones</u>, 280 So. 2d 431, 434 (Fla. 1973) (explaining District Courts of Appeal are bound to follow Florida Supreme Court precedent); <u>Johnson v. Johnson</u>, 284 So. 2d 231, 231 (Fla. 2d DCA 1973) ("We receive the statutory law from the legislature and its interpretation from our Supreme Court, agreeing with some, disagreeing with some, following all, because our bondage to law is the price of our freedom.").

Turning to that framework, Kowalski met his initial pleading burden.  He alleged specific personal jurisdiction by tracking the language of section 48.193(1), Florida Statutes, and provided facts.  Specifically, he alleged that Binance "engaged in business in Florida" and was "part of a conspiracy to steal, launder, and dissipate" Kowalski's bitcoin, with such tortious acts committed in Florida.  <u>See</u> § 48.193(1)(a), Fla. Stat. ("A person . . . submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts . . . [o]perating, conducting, engaging in, or carrying on a business or business venture in this state or. . . . [c]ommitting a tortious act within this state . . . .").

Even still, Binance did more than make a facial challenge.  In support of its motion to dismiss, Binance filed an affidavit of its chief compliance officer, Samuel Lim, contesting the allegations in Kowalski's complaint.  The

11

affidavit claimed that Binance does not engage in business in Florida, has no connection to Florida, and had no contact with the alleged co-conspirators.

But the trial court never considered this affidavit and its effect on the burden-shifting framework.  Indeed, this affidavit directly refuted the allegations in the complaint shifting the burden back to Kowalski, who then submitted more evidence.  When this occurs, the trial court's duty is not to simply pick a winner from the pleadings.  Rather, it must follow Venetian Salami Co.  Thus, the trial court erred by not performing the burden-shifting analysis and fully considering the evidence submitted by the parties.  See Cnty. of Cumberland, N.J. v. Kwap, 220 So. 3d 1207, 1209 (Fla. 4th DCA 2017) ("The court's failure to consider the evidence submitted beyond the four corners of the plaintiff's complaint was error.").  This procedural omission requires reversal.

On remand, the trial court should consider the jurisdictional evidence to determine whether section 48.193, Florida Statutes, is satisfied.  If the trial court finds that the affidavits and evidence cannot be reconciled, it must conduct a limited evidentiary hearing.  Venetian Salami Co., 554 So. 2d at 503.  If long-arm jurisdiction is established, then the trial court must

determine whether there are sufficient minimum contacts to satisfy due process.  See Cnty. of Cumberland, N.J., 220 So. 3d at 1209.

**IV.**

We also find Kowalski should have been provided the opportunity to amend his initial complaint at this stage in the proceedings.  See Fla. R. Civ. P. 1.190(a) ("Leave of court shall be given freely when justice so requires."); Boca Burger, Inc. v. Forum, 912 So. 2d 561, 567 (Fla. 2005) ("Therefore, the filing of a motion to dismiss does not terminate a plaintiff's absolute right to amend the complaint 'once as a matter of course.'"); see also Intego Software, LLC, 198 So. 3d at 896 ("The policy of liberal amendment applies in the context of a challenge to personal jurisdiction."); Lopez v. La Fuente, 343 So. 2d 930, 931 (Fla. 3d DCA 1977) ("The plaintiff, however, should have been given leave to amend his complaint to properly plead facts which, if true, would invoke personal jurisdiction over the non-resident defendants.").

Reversed and remanded for further proceedings.